UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| DEBRA KAY SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:10CV00076 AGF |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Debra Kay Simmons was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or Supplemental Security Income ("SSI") under Title XVI of the Act, *id*. §§ 1381-1383f.

Plaintiff, who was born on October 10, 1956, filed for benefits in June 2007, at age 50, alleging a disability onset date of August 8, 2003, due to back spasms, pain in the neck, arms, shoulders and hands, arthritic knees and spine, difficulty concentrating, headaches, and depression. After Plaintiff's applications were denied at the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 26, 2009, at which Plaintiff amended her alleged disability onset date to June 21, 2007. A supplemental hearing was held on October 5, 2009. By decision dated November 5, 2009, the ALJ found that Plaintiff had

the residual functional capacity ("RFC") to perform her past job as an assembly line worker, and therefore was not disabled under the Act.

Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on September 14, 2010. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review. Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate Plaintiff's pain and credibility; did not give sufficient consideration to Plaintiff's financial inability to obtain testing and treatment; gave significant weight to a non-medical source; and mistakenly did not believe that the record contained evidence of certain mental limitations. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

## BACKGROUND

### Work History and Application Form

In her Work History Report, Plaintiff listed and described her past work as a respiratory therapist (1990-1998 and 2001-2005), assembly line worker at a rubber factory (2000), house cleaner (four weeks in 2006), and cashier and baker at a bakery (December 2006-June 2007). At the bakery, cleaning, and factory jobs, she frequently lifted 20 pounds. (Tr. 267-73.)

In a Function Report, Plaintiff described her typical daily activities, including personal care, meals, house and yard work, getting around, shopping, handling money, hobbies and interests, and social activities. She also reported that her condition affected

various abilities, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, using hands, and dealing with stress. (Tr. 259-65.)

**Medical Record**

On August 8, 2003, Plaintiff underwent an anterior cervical discectomy fusion with plating at C5-6 and C6-7. A post-operative x-ray showed placement of the anterior fusion plate stabilized by vertebral body screws at the C5, C6, and C7 levels, and interposition bone strut grafts at the C5-6 and C6-7 interspaces. On November 13, 2003, a cervical x-ray showed fusion at C5-6 and C6-7. (Tr. 313-16.)

From April 13 through June 15, 2007, Plaintiff was treated at a family health center by Dr. Cari Worley and Dr. Lea Claycomb. On April 13, 2007, Plaintiff complained of pain in her back, neck, arm, and tailbone; hurting all over; and having weather-dependent pain in her hands and feet in the morning that took about an hour to "loosen up." She reported that she was working part time at a bakery and taking eight to ten aspirin packets a day. Examination showed pinpoint tenderness along the cervical spine, some paraspinal muscle spasm, and pain over the sacrum to touch. Plaintiff was diagnosed with back pain and prescribed Flexeril and Percocet. (Tr. 294-95.)

On May 3, 2007, Plaintiff stated that her back pain had worsened over the last six to eight months; that the pain went down her spine and was worse in her tailbone; and that the pain was worse at night, interrupting her sleep patterns, and when she sat or stood for an extended period of time. Plaintiff reported that she had finished both prescriptions

3

of Flexeril and Percocet, which she said had helped the pain. Dr. Claycomb noted that because Plaintiff lacked insurance, she was not interested in imaging at that time. Dr. Claycomb suggested that there could be a psychological component to Plaintiff's back pain and that it was not yet time to start chronic management with narcotics. Dr. Claycomb renewed Plaintiff's prescription for Percocet, and prescribed non-narcotic Ultram and Lidoderm patches, along with back exercises. (Tr. 293.)

On May 24, 2007, Plaintiff reported to Dr. Claycomb that her right shoulder pain had worsened over the previous few weeks, with some numbness and tingling down into the right arm. She said that she was interested in obtaining an MRI and that she would pay for it out of pocket. Dr. Claycomb told Plaintiff that she did not think an MRI was necessary yet, but that she would look into the cost. She observed a positive impingement sign, with pain at 180 degrees of rotation and with forward abduction, and a flat affect. (Tr. 292).

On June 15, 2007, Plaintiff told Dr. Claycomb that her back pain had worsened and that she had noticed swelling, tingling, and numbness in her right hand. She said she had given notice to her employer (at the bakery) and planned to apply for disability benefits because she could not keep up with the work due to pain. Dr. Claycomb observed point tenderness along the lower cervical spine and the top of the T-spine, a positive Spurling test on the right, and a very flat affect. Dr. Claycomb advised that the cost of an MRI would be prohibitive without insurance, but that she would like to obtain an MRI if Plaintiff were awarded disability benefits. Dr. Claycomb recommended that

4

Plaintiff continue her cervical traction and cervical strengthening exercises, and refilled her Percocet and Flexeril prescriptions. (Tr. 291.)

On August 20, 2007, state consultant Gregory K. Ivins, M.D., examined Plaintiff in connection with her applications for disability benefits. He observed that Plaintiff was in minimal distress, with moderate crepitus in both shoulders and mild patellofemoral crepitus in the knees. Supine straight leg raises were positive at 70 degrees on the left and 80 degrees on the right. Dr. Ivins's impression was history of C5/C6 and C6/C7 cervical fusion with mild decreased range of motion and residual pain. He wrote that Plaintiff should avoid work that involved looking up or down, and should not lift more than 25 pounds on a routine basis, but was otherwise capable of full-time work. (Tr. 299-302.)

An x-ray of the cervical spine on August 24, 2007, showed no acute fracture or dislocation, satisfactory post-fusion alignment, moderate degenerative spurring from the C4 vertebral body anteriorly, and mild narrowing of the right C5-6 and C6-7 neural foramina. (Tr. 323.)

On August 31, 2007, a non-examining, non-medical state consultant completed a physical RFC assessment form, opining in check-box format that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand/walk/sit each for six hours in an eight-hour work day, and push/pull without limitation. (Tr. 75-80.)

On December 6, 2007, Plaintiff was diagnosed with degenerative disc disease of the cervical spine, status post anterior cervical fusion, and lumbosacral pain with

5

probable degenerative joint disease. (Tr. 325-27.) A lumbar spine x-ray taken that day showed multilevel degenerative disc disease and spondylosis, along with slight depression of the superior endplate at L4, chronic. (Tr. 324). On April 7 and August 7, 2008, Plaintiff was seen again for follow-up for neck and back pain. Diagnoses of chronic cervical and chronic lumbar degenerative disc disease were given, and prescriptions for Percocet, Flexeril, and Amitriptyline were refilled. (Tr. 330-35).

**Hearing of January 26, 2009** (Tr. 41-74)

At the hearing on January 26, 2009, Plaintiff amended her alleged disability onset date to June 22, 2007. She testified that she had a driver's license, had obtained a GED, and was certified in respiratory therapy. She was divorced and lived in a mobile home with one of her two grown sons. She had no source of income other than food stamps, had no medical insurance, and was supported by her sons. Plaintiff testified that she stopped working at her last job -- as a cashier and baker -- due to pain. She had stopped working as a respiratory therapist because she could no longer concentrate well enough due to her pain. She left the assembly-line job at the rubber factory because it required standing for eight hours a day and she could not do that. Her work cleaning houses only lasted about four weeks. Plaintiff explained that after she stopped working as a respiratory therapist, she tried to do something else, but "just . . . couldn't do it."

Plaintiff described her daily activities as reading a lot, occasionally doing household chores and some grocery shopping, and some watching TV, mostly the news. She had some friends, but a limited social life and had a personal computer which she

6

used sometimes. She could handle her personal hygiene needs independently. Plaintiff testified that she was taking Percocet and Flexiril for pain, Amitiptyline to help her sleep, and an over-the counter medication for headaches. Since her back surgery in 2003, her pain had gotten worse and was currently a six or seven on a ten point scale. She experienced spasms in her back three or four times a week. Plaintiff stated that the Percocet did "a pretty good job" most of the time, reducing her pain to a two and controlling the spasms. She testified that she also arthritis in her knees and experienced knee pain about twice a week, and that the Percocet made her sleepy, and a little lightheaded sometimes.

Plaintiff testified that she had daily headaches and resulting difficulty concentrating. She experienced depression and anxiety "[j]ust over the situation," and was not under psychiatric care. She stated that she could sit for about an hour and stand for about 30 minutes at a time, and walk around a block. She thought that she could lift up to about ten pounds without difficulty.

Upon questioning by her attorney, Plaintiff testified that due to the side effects of her medications, she would take a nap four times a week for about three hours at a time. She said the Percocet lowered her neck pain but did not eliminate it, and that the pain in her shoulders and tailbone came and went. A VE testified, after which the ALJ decided to send Plaintiff for mental and physical consultative exams.

**Additional Medical Evidence**

On December 4, 2008, April 2, 2009, and August 6, 2009, Plaintiff was again seen for follow-up of her chronic neck and back pain. Her diagnoses continued to be chronic cervical and chronic lumbar degenerative disc disease. (Tr. 362-68.)

Meanwhile, on April 20, 2009, Thomas J. Spencer, Psy.D., performed a consultative psychological examination as arranged for by the ALJ. He diagnosed adjustment disorder, depressed/anxious, chronic, and a Global Assessment of Functioning ("GAF") score of 50 to 55.[1] Dr. Spencer opined that Plaintiff's symptoms were a reaction to the chronic pain she experienced, and were not consistent with a major affective disorder. In a Medical Source Statement - Mental, Dr. Spencer indicated that Plaintiff had mild restrictions in understanding, remembering, and carrying out simple instructions, making judgments on simple work-related decisions, and interacting appropriately with the public; and moderate restrictions in understanding, remembering, and carrying out complex instructions, making judgments on complex work-related decisions, interacting appropriately with supervisors and co-workers, and responding

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate "[s]ome impairment in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment.

8

appropriately to usual work situations and to changes in a routine work setting. (Tr. 337-42).

On May 11, 2009, Craig S. Heligman, M.D., performed a physical consultative examination and diagnosed depression, status post anterior cervical discectomy and fusion, and coccydynia (tailbone pain). He opined that Plaintiff was capable of functioning at the light level of labor. In a Medical Source Statement - Physical, Dr. Heligman indicated that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently; sit for eight hours without interruption; stand and walk for two hours without interruption; sit, stand, and walk for a total of eight hours during an eight-hour workday; could reach, handle, finger, and push and pull, and operate foot controls at least frequently; and could kneel, crouch, and crawl only occasionally. (Tr. 346-57).

**Supplemental Hearing of October 5, 2009** (Tr. 26-38)

At the second hearing, a different VE testified that Plaintiff's past work as a cashier and baker ranged from light to medium, and her work as a cleaner and assembly line worker was light and unskilled. The ALJ asked the VE to consider an individual of Plaintiff's age, education and work experience who could lift/carry and push/pull 20 pounds occasionally and ten pounds frequently; sit/stand/walk each for six hours in an eight-hour work day; only occasionally climb, balance, stoop, crouch, kneel or crawl; never do work requiring looking up and down, or climbing ladders; and who was limited to simple, repetitive tasks and instructions, and only occasional interaction with supervisors, co-workers, and the public. The ALJ testified that such an individual could

perform Plaintiff's past assembly line work, and that such jobs existed in significant numbers in the economy. The individual could also perform some office-helper jobs, jobs which also existed in significant numbers.

Under questioning by Plaintiff's attorney, the VE said that if the moderate limitations assessed by Dr. Spencer were added to the ALJ's hypothetical, along with a GAF of 50-55, the hypothetical claimant would not be able to perform any job. The VE also testified that if the GAF score of 50-55 was removed from the hypothetical, but the individual could not maintain concentration for 15 minutes at a time twice a month due to pain, the claimant could probably work for a period of time, but would have trouble keeping a job.

**ALJ's Decision of November 5, 2009**  (Tr. 9-18)

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 21, 2007, the amended alleged disability onset date. He found that she had the severe impairments of degenerative disc disease of the spine, headaches, arthritis, and adjustment disorder, but that she did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a deemed-disabling impairment listed in the Commissioner's regulations. The ALJ summarized the medical evidence, and in so doing noted the August 24, 2007 x-ray, and concluded that Plaintiff's complaints "were out of proportion to the radiological findings in the medical record." The ALJ also noted Dr. Spencer's GAF assessment of 50-55 and found that this was inconsistent with Dr. Spencer's other findings, especially considering that Plaintiff had

10

not been seen by any mental health provider during the applicable period, and was therefore unsupported by the record.

The ALJ found that Plaintiff had the RFC to perform light work as that term was defined in the regulations,[2] except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl; could not perform a job requiring looking up or down, exposure to unprotected heights, and climbing ladders, ropes, or scaffolds; and would require simple repetitive work with one or two-step instructions.

After summarizing Plaintiff's testimony at the first hearing, the ALJ found that Plaintiff's allegation that she could not concentrate enough to work was not "fully credible" because it was inconsistent with her testimony that she read much of the day. He found that her allegations of disabling neck and back pain and headaches were not fully credible due to the lack of imaging evidence that Plaintiff's cervical discs had herniated again since her fusion in 2003, the lack of diagnostic testing or imaging to support the cause or alleged severity of her headache pain, and further because Plaintiff

---

[2] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6, elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping; and that many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

11

stated that her headache pain was alleviated by over-the-counter medication.

The ALJ then reviewed the opinion evidence, including non-medical source's August 2007 physical RFC assessment, Dr. Spencer's April 2009 evaluation, and Dr. Heligman's May 2009 opinion. The ALJ gave Dr. Spencer's opinion "some weight," noting that it indicated the need for simple, repetitive work; and the non-medical source's and Dr. Heligman's opinions that Plaintiff could essentially perform light work "significant weight," finding them to be consistent with each other and with the medical evidence of record.

Based upon his RFC assessment and the VE's testimony at the supplemental hearing, the ALJ found that Plaintiff could perform her past relevant work as an assembly worker at the light, unskilled level, as she had done at the rubber factory, and was therefore not disabled. Acknowledging the VE's testimony that an individual with the limitations and GAF of 50-55 set forth in her attorney's hypothetical question would not be able to work, the ALJ stated that "such impairments are not in evidence as part of the medical record, and as such are unsupported by expert testimony or any treating provider's notes."

## **DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th

Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. *Id.* (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" *Id.* (quoting *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" *Id.* (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)). A court should "disturb the ALJ's decision only if it falls outside the available 'zone of choice.'" *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Both the impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months. *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work as she actually performed it, or as generally performed in the national economy. If so, the claimant is not disabled. If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors -- age, education, and work experience.

**ALJ'S Evaluation of Plaintiff's Pain and Credibility**

Plaintiff argues that the ALJ erred in determining that her subjective complaints of disabling pain were not fully credible. Specifically, she argues that in arriving at this determination, the ALJ improperly relied only on the absence of imaging evidence showing herniation of her cervical discs, especially where the reason for this absence was Plaintiff's lack of medical insurance and financial resources. Plaintiff also faults the ALJ for not taking into consideration her good work history and the side effects of her

medications that she testified to.

In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit Court of Appeals determined that an ALJ cannot reject a social security claimant's subjective complaints of pain solely because they are not fully supported by objective medical evidence. When examining a claimant's subjective complaints, in addition to objective medical evidence, the ALJ should consider the claimant's daily activities, the duration, frequency and intensity of the pain; any precipitating or aggravating factors; dosage, effectiveness and side effects of medication; and the claimant's functional restrictions. *Polaski*, 739 F.2d at 1322.

"'The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole.'" *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (quoting *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the reviewing court should] defer to [his or her] judgment even if every factor is not discussed in depth." *Id.; see also Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) ("[T]he ALJ was able to observe [the claimant] during her testimony at the hearing, and this, in addition to the voluminous medical evidence, convinced the ALJ that she was not fully credible and could perform light work. The ALJ is in the best position to make this determination, and we cannot say the ALJ erred in doing so.") (citation omitted). While an ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, a lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's

credibility. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (citation omitted).

Here, it is somewhat troubling for the ALJ to have relied on the absence of imaging evidence in discrediting Plaintiff's credibility with regard to her allegations of disabling pain and headaches, as this absence seems, at least in part, to be due to Plaintiff's lack of medical insurance and financial resources. However, the ALJ relied on other valid factors in discrediting Plaintiff's credibility, including the inconsistency between the extent of her alleged pain and the radiological evidence in the record. Furthermore, this is a case where the ALJ's RFC assessment is clearly supported by medical evidence, namely, the reports of two examining physicians, Drs. Ivins and Heligman. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *See Perkins*, 648 F.3d at 901 (citations omitted). Here, the ALJ noted the alleged side effects of Percocet, so it cannot be said that he ignored this factor even though he did not specifically explain the weight he accorded them. In sum, the Court concludes that this is a case of poor opinion writing in not addressing each of the *Polaski* factors, rather than of insufficient evidence to support the ALJ's credibility determination. *See Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) ("'Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence.'") (quoting *Carlson v. Chater*, 74 F.3d 869 (8th Cir. 1996)).

**ALJ's Reliance on a Non-Medical Source**

Plaintiff argues that the ALJ erred in affording substantial weight to the August 27, 2007 opinion of a non-medical source. It is true that an RFC assessment based entirely on the opinion of a non-medical source would be reversible error, especially where there are more restrictive medical assessments in the record and the ALJ mistakenly believed that the non-medical source was a physician. *See Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007). Here, however, the ALJ relied on the non-medical source's evaluation only because it was consistent with the medical evidence, and there is no indication that the ALJ thought this source was a medical source. Furthermore, the ALJ specifically relied upon Dr. Heligman's May 11, 2009 Medical Source Statement, which was essentially the same as the non-medical evaluator's opinion. Thus, this argument for reversal is without merit. *See Greene v. Astrue*, No. 4:10CV831 CDP, 2011 WL 2472556, at *5 (E.D. Mo. June 21, 2011) (finding no reversible error where the ALJ gave a non-medical source's opinion some weight, as the ALJ's decision was based upon the broader medical consensus among the majority of the claimant's treating and consulting physicians, as well as upon his own assessment of the claimant's credibility, and the ALJ was aware that the source in question was not a physician).

**ALJ's Evaluation of the VE's Testimony**

Plaintiff argues that the ALJ's rejection of the VE's answer to Plaintiff's counsel's hypothetical question was based on a misunderstanding of the record. As recounted above, the VE testified in response to questioning by Plaintiff's attorney that a GAF of

50-55, as assessed by Dr. Spencer, would preclude the performance of work. Plaintiff contends that the ALJ rejected this testimony because he erroneously believed that a GAF of 50-55 was not contained in the record. A review of the record shows that this argument is without any merit. The ALJ specifically noted Dr. Spencer's GAF assessment of 50-55 and specifically rejected it on the basis that it was inconsistent with Dr. Spencer's other findings and the record as a whole. The Court further concludes that the ALJ was entitled to reject the GAF of 50-55. As noted above, Dr. Spencer found only mild restrictions in understanding simple instructions and making simple work-related decisions. Also as the ALJ noted, the record contains no evidence that Plaintiff ever sought treatment from a mental health professional.

## **CONCLUSION**

The ALJ's determination that Plaintiff is not disabled is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

*[signature: Audrey G. Fleissig]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2012.